IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER BARTON | ) | |
| Petitioner | ) | |
| | ) | Case # 14-8001-CV-W-GAF |
| v. | ) | |
| | ) | |
| | ) | |
| CINDY GRIFFITH | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRIS KOSTER | ) | |
| | ) | |
| Respondent | ) | |

## _**FIRST AMENDED PETITION, AND REQUEST FOR HEARING**_

Comes now Petitioner, by attorney, and pursuant to F.R.Civ.P. 15(a)(1)(B), does set forth the following as his first amended petition to the Court pursuant to 28 U.S.C. 2254.

1. The Petitioner is Walter Barton.  Mr. Barton's Missouri Inmate Number is 990108.  Mr. Barton is incarcerated at the Potosi Correctional Center, in Mineral Point, Missouri

2. Respondents are Cindy Griffin, Warden of the Potosi Correctional Center, and Chris Koster, Attorney General of the State of Missouri.

3. The name and location of court which entered the judgment of conviction under attack are the Circuit Court of Cass County Missouri.  The Case Number is

05CA-CR 00877. Petitioner pled not guilty to the charge of murder in the first degree. A jury trial of the matter was had. Petitioner did not testify at the trial. The date of the verdict by jury was March 10, 2006, and the date of sentencing by the Circuit Court was July 6, 2006.

4. Petitioner did appeal from the judgment of conviction. The details of that appeal are as follows:

(a)     Name of court:  Missouri Supreme Court

(b)     Result:  Affirmed, 4-3 decision

(c)     Date of Opinion:  December 18, 2007

(d)     Date Motion for Rehearing Decided:  January 15, 2008

(e)     Date Petition for Certiorari Decided:  October 6, 2008-See **Barton v. Missouri**, 555 U.S. 842 (2008)

(f)     Citation of Opinion: **State v. Barton**, 240 S.W.3d 693 (Mo.banc 2007)

5. With respect to this judgment, Petitioner has previously filed other petitions, applications, or motions other than a direct appeal.

(a)     As to the first Petition

(1)     Name of Court:  Circuit Court of Cass County

(2)     Nature of proceeding:  Rule 29.15 Proceeding

(3)     Case Number:  08CA-CV01371-01

(4)     Date filed:  April 11, 2008

(5)     Grounds raised:

(a) ineffective assistance of trial counsel

    (i)        for substandard impeachment of witness Debbie Selvidge,

    (ii)       for failure to call witness Michelle Hampton,

    (iii)      for substandard impeachment of witness Carol Horton,

    (iv)      for failure to object to improper closing argument,

    (v)       for failure to call blood spatter expert,

    (vi)      for failure to object to opening statement regarding informer testimony, and for failure to seek other, unspecified relief

    (vii)     for failure to adduce evidence during penalty phase regarding brain injury,

    (viii)    for making poor penalty phase closing argument,

    (ix)     for failure to investigate possible prosecutorial misconduct in light of communication from state's witness Larry Arnold,

(b) *Brady* violations

(c) Constitutional rights violation related to execution delay

(6)    There was an evidentiary hearing conducted.

(7)    Result:  Petition Denied

(8)    Date of result:  February 14, 2013

(9)    An appeal was taken from the result

    (a) Name of Court:  Missouri Supreme Court

    (b) Result:  Affirmed

    (c) Date of Opinion:  May 13, 2014

    (d) Date Motion for Rehearing Decided:  June 24, 2014

    (e) Citation of Opinion:  ***Barton v. State***, 432 S.W.3d 741 (Mo.banc 2014)

(b)     As to the second petition,

(1)     Name of court:  Circuit Court of Cass County

(2)     Nature of proceeding:  Requests for finding of abandonment of post-conviction counsel and for permission to supplement Rule 29.15 Amended Petition

(3)     Case Number:  08CA-CV01371-01

(4)     Date filed:  June 9, 2015

(5)     Grounds raised:

(a) Abandonment of post-conviction counsel due to counsel's mental illness during post-conviction proceedings
(b) Ineffective assistance of counsel
>
>     (i)      for failure to effectively confront sole informer Katherine Allen upon strong and readily recognizable bases,
>
>     (ii)     for failure to confront critical blood spatter evidence through identified counter-expert and on important and readily discernable legal and scientific bases,
>
>     (iii)    for failure to challenge competence of Barton to assist with his own defense,
>
>     (iv)     for failure to execute an effective mitigation strategy when options were available
>
>     (v)      for failure to raise error in trial court instructions given in penalty phase of trial,
>
>     (vi)     for failure to raise need for and right to mistrial because of prosecution not presenting informer testimony after describing such testimony in opening statement,
>
>     (vii)    for failure to raise error in trial court receiving victim impact evidence in penalty phase.

(6)     An evidentiary hearing was not conducted.

(7) Result:  Motion overruled

(8) Date of result:  June 24, 2015

(9) An appeal was taken

    (a) Name of Court:  Missouri Supreme Court

    (b) Result:  Affirmed

    (c) Date of Opinion:  May 3, 2016

    (d) Date Motion for Rehearing Decided:  Still Pending

    (e) Citation of Opinion:  ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016)

6. There have been other trials, direct appeals, or post-conviction proceedings conducted in state court with respect to this matter.

    (a) Prior trials
        i. ***State v. Barton***, Christian County Case Number CR291-679F, change of Judge granted, Judge Theodore Scott, 30th Judicial Circuit, designated as trial Judge, first three trials actually tried in Christian County
- First trial, jury selected and sworn in Henry County on April 2 and 3, 1993, mistrial declared April 5, 1993,
- Second trial, jury selected and sworn in Cooper County on October 22 and 23, 1993, mistrial declared on October 28, 1993
- Third trial, jury selected and sworn in Callaway County on April 8 and 9, 1994, jury verdict of guilty and sentence of death returned on April 14, 1994, Court sentencing on June 22, 1994

        ii. ***State v. Barton***, Benton County Case # CR197-4F, Judge Theodore Scott, 30th Judicial Circuit, held over as trial Judge
- Fourth trial, jury selected and sworn and case tried in Benton County, jury verdict and sentence of death returned on April 30, 1998, Court sentencing on June 10, 1998

(b) Prior Direct Appeals
  i. First appeal, consolidated appeal from third trial and first PCR proceeding, *State v. Barton*, 936 S.W.2d 781 (Mo.banc 1996), reversed on direct appeal due to improper limitations placed on defendant's first phase closing argument, *Id*, 785-786
  ii. Second appeal, appeal from fourth trial, *State v. Barton*, 998 S.W.2d 19 (Mo.banc 1999), 5-2 decision affirming conviction and sentence
(c) Prior Post-conviction proceedings
  i. First Rule 29.15 proceeding, Christian County Case # CV194-890-CC, heard and overruled by Judge Scott, ruling rendered moot by reversal on consolidated appeal, *State v. Barton*, 936 S.W.2d 781 (Mo.banc 1996)
  ii. Second Rule 29.15 proceeding, Benton County Case # CV199-453CC, heard and overruled by Judge Scott, who had retired, and was presiding by special appointment as senior Judge, that decision was reversed for lack of sufficient findings, case was remanded for complete rehearing, and special appointment of Judge Scott was rescinded in *Barton v. State*, 76 S.W.3d 280 (Mo.banc 2002), case went to Benton County Circuit Judge John Sims, who heard evidence, and on January 30, 2004 set aside Barton's conviction and sentence and ordered a new trial. See Appendix A.

7. The following is a concise statement of each and every ground upon which Petitioner claims that he is being held unlawfully, together with a brief summary of the facts supporting each ground. Petitioner does state that, in connection with each and all of these grounds for relief, he was denied his rights pursuant to one or all of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States. As well, Petitioner does state that, in connection with each and all of these grounds for relief, but for the error mentioned upon that ground, the outcome in Petitioner's trial would have been different. Petitioner does further state that, in ruling upon grounds one, two, three and four as they have, the

Missouri Courts made decisions which were contrary to, or involved unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, and/or have made decisions based on an unreasonable determination of the facts in light of the evidence presented in State Court proceedings. 28 U.S.C. 2254(d)(1) and (2). As to grounds five through fifteen, ineffective assistance of trial and/or appellate counsel is alleged, specifically that the actions or inactions of counsel were substandard, and that Mr. Barton was prejudiced thereby in that the outcome of the proceedings would have been different had counsel acted effectively. Also, as to grounds five through fifteen, the matters were erroneously not properly presented to Missouri state courts due to ineffectiveness of Mr. Barton's state post-conviction Counsel, that ineffectiveness amounting to abandonment of counsel as caused by appointed Counsel's mental illness; the ineffectiveness of post-conviction counsel constitutes cause to excuse any procedural default of these issues especially because the underlying issues of ineffective assistance of trial counsel are substantial. *Martinez v. Ryan*, 132 S.Ct. 1309, 1318-1319 (2012).

## I. Ground One
## Violation of Mr. Barton's Right to be free from Double Jeopardy
## The First Time

### A. Statement of Ground One

The decision by the Missouri Supreme Court, by a vote of 4-3, violated Mr. Barton's rights to be free from double jeopardy, to be free from cruel and unusual punishment and to enjoy due process of law in violation of the 6th, 8th and 14th Amendments to the Constitution of the United States. This was so because, at Mr. Barton's first trial, the prosecution goaded the defense into moving for a mistrial by deliberately failing to follow statutory requirement for endorsement of witnesses. This was done for the purpose of avoiding trial at that point on a weak case and allowing time for development of further evidence in order to improve chances of conviction. Therefore, retrial after prosecutors goaded the mistrial for such reasons violated Mr. Barton's rights aforementioned.

## B. Statement of Facts Supporting Ground One

At the time of the first trial against Mr. Barton, the evidence against him was, in the words of the Missouri Supreme Court's dissenters, "sparse". Though required by law to do so, the very experienced prosecutor in the case failed to file with the Court and provide to defense counsel an endorsement list of witnesses to be called at trial. After the jury in the case was selected and sworn, the lack of endorsement of witnesses was discovered, and defense counsel moved for mistrial because of the lack of the required and necessary endorsement of witnesses. That request was granted, and the jury was discharged. Defense counsel further moved for discharge of the defendant on double jeopardy grounds, but that request was

denied.  It was claimed by prosecutors that the failure to endorse witnesses was non-purposeful.  However, that claim is belied by the fact that prosecutors proceeded to improve their case by adding informer and expert witness testimony. Moreover, prosecutors have subsequently engaged in further discovery misconduct aimed at gaining unfair tactical advantage, misconduct which has repeatedly required Court intervention and action.  Consequently, the weight of the evidence demonstrates that the prosecution goaded the original request for mistrial to gain tactical advantage.  Therefore, trying Mr. Barton thereafter violated his right to be free from double jeopardy, and Mr. Barton's conviction and sentence must be reversed, and the charge against him must be dismissed.

<u>C. Direct Appeal pertaining to Ground One</u>

This matter was raised and decided, by a 4-3 vote, upon Mr. Barton's direct appeal.  See ***State v. Barton***, 240 S.W.3d 693, 711, 718  (Mo.banc 2007)

## **II. Ground Two**
## **Violation of Mr. Barton's Right to be free from Double Jeopardy**
## **The Second Time**

<u>A. Statement of Ground Two</u>

A second decision by the Missouri Supreme Court, also by a vote of 4-3, violated Mr. Barton's rights to be free from double jeopardy, to be free from cruel and unusual punishment and to enjoy due process of law in violation of the 6th, 8th and 14th Amendments to the Constitution of the United States.  This was so

because, at Mr. Barton's fourth trial, the prosecution failed to provide impeachment discovery pertaining to a critical witness and then knowingly elicited false testimony from that witness. This prosecutorial misconduct was uncovered in postconviction proceedings, and resulted in the setting aside of the fourth trial conviction and sentence. This prosecutorial misconduct was done for the purpose of gaining unfair advantage in a case in which the evidence was, to say the least, "less than overwhelming". Therefore, retrial after prosecutors unlawfully and purposefully created these circumstances violated Mr. Barton's rights aforementioned.

## B. Statement of Facts Supporting Ground Two

One of the witnesses developed after the first trial mistrial declaration was a woman who called herself Katherine Allen, but who went by a long list of aliases. At the fourth trial, prosecutors elicited from Allen testimony that she had six prior convictions. However, at post-conviction proceedings, it was established that Allen, in fact, had twenty-nine prior convictions. Not only that, Allen had made a *quid pro quo* agreement whereby an unrelated case had been dismissed against the witness in return for her testimony against Mr. Barton. Prosecutors knew about all of this information, but still elicited the false testimony from Allen. Moreover, prosecutors had not turned over to defense attorneys any of this information prior to or during trial. Because of the prosecution elicitation of this false testimony,

because of the prosecution failure to provide discovery to the defense about the impeachment information, and because the witness was a critical one against Mr. Barton, the post-conviction court set aside Mr. Barton's conviction. See Appendix A. In light of the clear facts in this instance, and in light of other unfair advantages taken by prosecutors in this case, there is no question that the actions here were done with unlawful intent, were meant never to be discovered, but if discovered were meant to goad Mr. Barton in seeking the setting aside of his conviction and sentence. Therefore, trying Mr. Barton thereafter violated his right to be free from double jeopardy, and Mr. Barton's conviction and sentence must be reversed, and the charge against him must be dismissed.

### C. Direct Appeal pertaining to Ground Two

This matter was raised and decided, by a 4-3 vote, upon Mr. Barton's direct appeal. See *State v. Barton*, 240 S.W.3d 693, 700-702, 718 (Mo.banc 2007)

### III. Ground Three
### The Death Penalty, upon the record in this case, violates Mr. Barton's rights to be free from cruel and unusual punishment and to enjoy due process of law

### A. Statement of Ground Three

The Missouri Court, by a 4-3 vote, violated Mr. Lyons' rights to be free from cruel and unusual punishment and to enjoy due process of law in derogation of the 8th and 14th Amendments to the Constitution of the United States. The Missouri Supreme Court majority committed these Constitutional errors by

sentencing Mr. Barton to death on what the Missouri Supreme Court dissenters described as a "sorry record" consisting of marginal evidence of guilt and repeated instances of prosecutorial misconduct. Consequently, the death sentence in this case violated United States Supreme Court precedent on the matter.

## B. Statement of Facts Supporting Ground Three

As the Missouri Supreme Court dissenters observed, the evidence of Mr. Barton's guilt was "far from overwhelming". Particularly, the case against Mr. Barton relied critically on the double-whammy of two witnesses who offered the only supposed direct evidence of guilt. One was an informer, who called herself Katherine Allen, who was never fairly impeached over her 29 prior convictions, her history of lying in court related matters, and her receipt of a case dismissal in return for her testimony. The other was a blood spatter expert, Robert Newhouse, whose opinions were never impeached using readily available contrary scientific principles offerable from an expert for the defense whose dynamic opinions were never developed and presented. This case sinks even lower by repeated instances of prosecutorial misconduct designed to gain unfair and unlawful advantage at every turn. Based upon this record, rejection of the death penalty, as recommended by the Missouri Supreme Court dissenters, would have been in full accordance with United States Supreme Court precedent on the subject, while

imposition of a death sentence was contrary to or involved unreasonable

application of that same precedent.

<u>C. Direct Appeal pertaining to Ground Three</u>

This matter was raised and decided, by a 4-3 vote, upon Mr. Barton's direct

appeal.  See ***State v. Barton***, 240 S.W.3d  693, 702-703, 709-711, 714-718

(Mo.banc 2007).

**<u>Ground Four</u>**
**<u>Ineffective Assistance of Counsel in Failing to Present Witness</u>**
**<u>Michelle Hampton</u>**

<u>A. Statement of Ground Four</u>

Mr. Barton was denied his rights at trial, to effective assistance of counsel,

to present evidence, to be free from cruel and unusual punishment, and to enjoy

due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the

Constitution of the United States.  This denial of rights occurred because counsel

failed to develop and present readily available evidence from witness Michelle

Hampton.   There was no strategic reason for counsel to not want to present this

available evidence.  Trial counsel knew, or with reasonable diligence could have

found out, i) who the witness was, ii) that Mr. Barton wanted the witness called,

iii) that the witness was available to testify if called, and iv) what the witness'

testimony would have been.  There is a reasonable likelihood that, had the

testimony of Ms. Hampton been presented, the jury would not have found Mr. Barton guilty of murder in the first degree.

## B. Statement of Facts Supporting Ground Four

Michelle Hampton was prepared to testify that, at the time at which the prosecution postulated that Mr. Barton was killing the victim, she (Ms. Hampton) saw Mr. Barton in another location. Ms. Hampton was further prepared to testify that she noted Mr. Barton's clothing to be the same clothing he was wearing late that day, the same clothing seized from Mr. Barton by police at the time of Barton' arrest, and she noted that she saw no blood on that clothing at the time that she saw Mr. Barton. Trial Counsel knew or should have known about Ms. Hampton's existence and whereabouts, as well as the nature of her testimony, since Hampton was actually called as a witness in prior trials. Moreover, trial counsel knew that Mr. Barton wished the witness to be called since he requested that. In light of the power of this testimony, and the closeness of the case, there is a reasonable likelihood that, had Ms. Hampton been called as a witness, the outcome of the case would have been different.

## C. Direct Appeal pertaining to Ground Four

This matter was not raised upon direct appeal.

## D. Post-conviction proceedings pertaining to Ground Four

This matter was raised and decided in post-conviction proceedings.  See

***Barton v. State***, 430 S.W.3d 741, 750-751 (Mo.banc 2014**).**

<h2 style="text-align:center">V. Ground Five<br>Ineffective Assistance of Trial Counsel in Confrontation of Katherine Allen</h2>

<h3 style="text-align:center">A. Statement of Ground Five</h3>

Mr. Barton received prejudicial ineffective assistance of trial counsel with respect to attacking the testimony of informer Katherine Allen, one of the two critical witnesses in the case against Barton.  The ineffectiveness involved the failure by trial counsel to confront Allen with readily available impeachment information, including judicial findings previously made in the case.  See Appendix A.  There is a reasonable probability that the outcome of the proceedings would have been different had this witness been properly impeached in readily discernable ways.  In fact, a judicial determination regarding the outcome determinative nature of this impeachment was previously made in the case against Mr. Barton.  See Appendix A.  In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to present evidence, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

<h3 style="text-align:center">B. Statement of Facts Supporting Ground Five</h3>

Katherine Allen, a jailhouse informer, provided the only fifth trial testimony regarding a purported admission by Mr. Barton. In January of 2004, in Rule 29.15 proceedings, Mr. Barton's 1998 fourth trial conviction and death sentence were examined by Circuit Judge John Sims. See Appendix A. Judge Sims found that the State had knowingly used "perjured testimony" from Allen in which Allen understated as six her total conviction record when the correct total was 29, and omitted a case-dismissal-incentive given her for her testimony. Judge Sims went on to set aside that previous conviction and sentence finding further that Allen's testimony was so critical to the State's case that there was a reasonable probability that, had Allen been properly impeached, the outcome of the trial would have been different. The State did not appeal Judge Sims' findings. Nevertheless, when Allen reprised her testimony at the fifth trial, she again repeated her contention that she had only been convicted six times and claimed that the case dismissal was obtained solely by her disposition of detainer efforts. Though defense counsel had Judge Sims' ruling in their file, they never used those findings to confront Allen's reprise of her falsehoods, and instead still understated her criminal conviction history by half. In addition, defense counsel had in their files but did not use multiple instances in which Allen spun falsehoods in the multiple judicial proceedings against her. Since the case against Mr. Barton in the fifth trial was even weaker than the fourth trial, as it lacked the testimony of other informers,

Judge Sims' determination about the level of prejudice from the failure to properly impeach Allen is even more strongly applicable.

## C. Direct Appeal pertaining to Ground Five

This matter was not raised upon direct appeal.

## D. Post-conviction proceedings pertaining to Ground Five

This matter was not raised in original post-conviction proceedings. Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied. See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016)

## E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. ***Barton v. State***, 2016 WL 2343202 *2, (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and

experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and

Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of trial counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

## VI. Ground Six
### Ineffective Assistance of Appellate Counsel in not addressing plain error in relation to testimony of Katherine Allen

### A. Statement of Ground Six

Mr. Barton received prejudicial ineffective assistance of appellate counsel with respect to the failure to raise plain error committed by the trial court in not *sua sponte* making a finding of prosecutorial misconduct and punishing that

prosecutorial misconduct either by declaring a mistrial or by reprimanding the prosecutor and critical witness Katherine Allen before the jury. The declaration of mistrial or reprimand should have occurred when Allen, upon direct examination by prosecutors, grossly underrepresented her conviction history and misrepresented that dismissal of an unrelated charge against her was not made for the Barton-case-related reason. A previous judicial determination had been made in the case that the representations made by Allen in these regards were false, and that the false representations by Allen were outcome-determinative in the case. See Appendix B. Though the Judge presiding over the trial was different than the one who had made the decision about the Allen testimony, the trial judge knew or should have known about the previous, binding judicial finding, and therefore should have acted *sua sponte* to remedy the prosecutorial misconduct which occurred before him. There is a reasonable probability that the outcome of the proceedings would have been different had this critical witness been so impeached. In fact, a judicial determination regarding the outcome determinative nature of this impeachment was previously made in the case. See Appendix A. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to present evidence, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

## B. Statement of Facts Supporting Ground Six

Katherine Allen, a jailhouse informer, provided the only fifth trial testimony regarding a purported admission by Mr. Barton. In January of 2004, in Rule 29.15 proceedings, Mr. Barton's 1998 fourth trial conviction and death sentence were examined by Circuit Judge John Sims. See Appendix A. Judge Sims found that the State had knowingly used "perjured testimony" from Allen in which Allen understated as six her total conviction record when the correct total was 29, and omitted a case-dismissal-incentive given her for her testimony. Judge Sims went on to set aside that previous conviction and sentence finding further that Allen's testimony was so critical to the State's case that there was a reasonable probability that, had Allen been properly impeached, the outcome of the trial would have been different. The State did not appeal Judge Sims' findings. Nevertheless, when prosecutors presented Allen at the fifth trial, she again repeated her false contention that she had only been convicted six times and made things even worse by claiming, contrary to Judge Sims' finding, that the case dismissal was obtained solely by her disposition of detainer efforts. Prosecutors obviously were aware of Judge Sims' contrary findings, but did nothing to correct her perjury. The trial court as well knew or should have known about Judge Sims' contrary findings. Consequently, even without instance from the defense, it was incumbent upon the trial court to sanction the perjury being offered by the state, either by declaring a

mistrial or by reprimanding the prosecutor and the witness before the jury and correcting the lies being told with the truth as previously found by Judge Sims. Since the case against Mr. Barton in the fifth trial was even weaker than the fourth trial, as it lacked the testimony of other informers, Judge Sims' determination about the level of prejudice from Allen's misrepresentations is even more strongly applicable.

C. Direct Appeal pertaining to Ground Six

This matter was not raised upon direct appeal.

D. Post-conviction proceedings pertaining to Ground Six

This matter was not raised in original post-conviction proceedings.  Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied.  See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016).

E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. ***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016).  At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B).

Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of direct appeal counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

# VII. Ground Seven
## Ineffective Assistance of Trial Counsel in Confrontation of Blood Spatter

### A. Statement of Ground Seven

Mr. Barton received prejudicial ineffective assistance of trial counsel with respect to attacking the testimony of the state's blood spatter expert, the other of the two critical witnesses in the case against Barton. The ineffectiveness involved the failure by counsel to confront the expert with readily available impeachment information, particularly from a counter-expert enlisted but not properly used by counsel. There is a reasonable probability that the outcome of the proceedings would have been different had the state's expert been so impeached. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to present evidence, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

### B. Statement of Facts Supporting Ground Seven

Blood stains, one of which was DNA-matched to the victim, were the other pieces of critical evidence against Mr. Barton. Mr. Barton had explained that he believed he had gotten the victim's blood on him when, after discovery of the body, he slipped and fell while pulling Debbie Selvidge, the victim's granddaughter, away from the body. The granddaughter confirmed this explanation when interviewed by police on the night the body was discovered,

though she backed away from that story in her testimony at trial. In an effort to trump Mr. Barton's explanation, the State utilized a blood spatter expert to claim that the small stains found on Mr. Barton's clothes were consistent with the impact spatter of a stabbing action, but were not consistent with a smear of the sort which would occur upon a brushing against blood during a fall like that described by Mr. Barton. In preparation for the 2006 trial, Mr. Barton's trial defense team briefly and informally consulted with a blood spatter expert, Lawrence Renner, at a seminar, and after that brief consultation, decided against using any expert at all and instead made an attempt to discredit the entire field of blood spatter analysis, calling it a junk science. Because trial counsel had not done research upon the matter in readily available sources, they did not understand the powerful impeachment information against the state's expert which was readily available for the asking which would have debunked the opinions of the state's expert. Particularly, when Mr. Renner was properly provided all of the available evidence for his independent analysis, he reached conclusions contrary to those of the state's expert, and in keeping with Mr. Barton's account of what occurred. See Appendix C. Moreover, the alternative strategy chosen, to try to debunk the science entirely, flew in the face of more than fifty years of court holdings recognizing the validity of the science. Consequently, the approach taken constituted ineffective assistance. The prejudice was profound because the blood spatter evidence was

critical to the government's case, and undermining it could have been readily accomplished. Therefore, there is a reasonable probability that the outcome of the case would have been different but for the ineffectiveness of counsel.

<u>C. Direct Appeal pertaining to Ground Seven</u>

This matter was not raised upon direct appeal.

<u>D. Post-conviction proceedings pertaining to Ground Seven</u>

These particular issues, regarding the favorable opinions available from the expert identified but improperly prepared by trial counsel, and regarding the legal impossibility of the trial counsel's impeachment strategy, were not raised in original post-conviction proceeding, even though the information would have been readily available and obvious to competent counsel. Instead, state post-conviction counsel argued that trial counsel were ineffective by not enlisting an expert different from the one they consulted at time of trial; upon this basis, the claim of ineffectiveness was rejected since trial counsel had no duty to "shop" for what might be considered a better expert. ***Barton v. State***, 432 S.W.3d 741, 755-756 (Mo.banc 2014).

Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of the correctly crafted issue to his original amended post-conviction motion, but those requests were denied. See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016).

E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. ***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues

(Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because a) through minimally competent legal research, they would have learned that that their theory of ineffectiveness of trial counsel was defective, b) through minimally competent factual research, they would have learned an effective theory for challenge against trial counsel's performance, that the expert actually enlisted by trial counsel would have provided critically important testimony but for the incompetent preparation engaged by trial counsel, and c) through minimally competent legal research, they would have learned an additional effective theory for challenge against trial counsel's performance, that the strategy actually employed by trial counsel, to endeavor to claim, without support, that blood spatter analysis is "junk science", runs contrary to years of judicial findings in favor of allowance of testimony upon that science.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and

Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of trial counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

## VIII. Ground Eight
### Ineffective Assistance of Appellate Counsel in failing to raise plain error of trial court not declaring mistrial when the prosecution did not evince testimony after opening statement claim about supposed Barton admissions

### A. Statement of Ground Eight

Mr. Barton received prejudicial ineffective assistance of appellate counsel with respect to the failure to raise plain error committed by the trial court in not declaring a mistrial. Mistrial should have been declared when the prosecution

described, in opening statement, testimony to be had by three informers about damning admissions made by Barton, and then the prosecution failed to present the testimony of those informers. There is a reasonable probability that the outcome of the proceedings would have been different had this plain error issue been raised by appellate counsel. In these ways, Mr. Barton was denied his rights to enjoy effective assistance of counsel, to confront adverse witnesses, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

## B. Statement of Facts Supporting Ground Eight

In his opening statement, the prosecutor represented that he would present jailhouse informer testimony about admissions by Mr. Barton "that he killed an old lady by cutting her throat, stabbing her and cutting an X on her", that his stabbing of the victim caused blood to splatter on his face, that he enjoyed the taste of licking the blood off his face, and that he would kill one of the informers because the informer intended to testify about his (Barton's) admissions. Ultimately, the witnesses were not called by the State. Despite the obvious prejudice of the then unsupported opening statement claims, the trial court did not grant relief, *sua sponte* and appellate defense counsel did not request plain error review about this failure by the trial court.

## C. Direct Appeal pertaining to Ground Eight

This matter was not raised upon direct appeal.

### D. Post-conviction proceedings pertaining to Ground Eight

These particular issues, challenging appellate counsel not raising the failure of the trial court to grant mistrial *sua sponte* in light of the failure to present the damaging informer testimony mentioned in opening statement, was not raised in original post-conviction proceedings, even though this legal approach to the matter would have been readily ascertainable by competent counsel. Instead, state post-conviction counsel argued that trial counsel were ineffective by failing to make some unspecified objection to the opening statement; reasonably competent counsel would have learned, as the Missouri Courts found, that there were no legal or factual bases for such an argument. ***Barton v. State***, 432 S.W.3d 741, 756, fn. 5 (Mo.banc 2014).

Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of the correctly crafted issue to his original amended post-conviction motion, but those requests were denied. See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016).

### E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court.

*Barton v. State*, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control

mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because a) through minimally competent legal and factual research, they would have learned that that their theory of ineffectiveness of trial counsel was defective, b) through minimally competent legal and factual research, they would have learned an effective theory of appellate counsel ineffectiveness, that when the state failed to support its luridly damaging opening statement with the testimony of the informers, the trial court should have ordered a mistrial *sua sponte*, but did not, and that issue should have been raised on appeal by competent counsel, but was not.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr.

Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of appellate counsel was substantial, and post-conviction counsel were ineffective in failing to properly raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

## IX. Ground Nine
## Ineffective Assistance of Appellate Counsel in failing to raise plain error of jury misinstruction

### A. Statement of Ground Nine

Mr. Barton received prejudicial ineffective assistance of appellate counsel with respect to the failure to raise plain error committed by the trial court in misinstructing the jury concerning statutory aggravating circumstances in a way which not only violated Missouri Approved Instructions but also substantially lessened the prosecution's burden of proof on the subject. There is a reasonable probability that the outcome of the proceedings would have been different had this plain error issue been raised by appellate counsel. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to be free from

cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 8th and 14th Amendments to the Constitution of the United States.

## B. Statement of Facts Supporting Ground Nine

In its notice of intent to seek the death penalty, prosecutors alleged statutory aggravating circumstances that Mr. Barton had two serious assaultive convictions and had committed the murder in an outrageously or wantonly vile, horrible or inhuman manner. However, contrary to the law and the MAI, the instruction submitted by the State and given to the jury in Mr. Barton's trial erroneously failed to call upon the jury to make the detailed finding about serious assaultive convictions in the language of the model MAI instruction 40; instead, the instruction employed the simple prior conviction finding language of model MAI instruction 41B, and unlawfully allowed the jury to make its statutory aggravating factor findings on that inadequate basis.

## C. Direct Appeal pertaining to Ground Nine

This matter was not raised upon direct appeal.

## D. Post-conviction proceedings pertaining to Ground Nine

This matter was not raised in original post-conviction proceedings. Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction

motion, but those requests were denied.  See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016).

<u>E. Ineffectiveness of and abandonment by state post-conviction counsel</u>

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. ***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016).  At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B).  Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B).  In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B).  As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B).  Ms. Bartholow indicated that she had

misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the

process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of direct appeal counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

## X. Ground Ten
### Ineffective Assistance of Appellate Counsel in failing to raise plain error of receipt of victim impact evidence and argument

#### A. Statement of Ground Ten

Mr. Barton received prejudicial ineffective assistance of appellate counsel with respect to the failure to raise plain error committed by the trial court in failing to refuse, *sua sponte*, state-proffered penalty phase evidence and argument pertaining to victim impact. Such evidence was not admissible in the case against Mr. Barton under the Missouri Statutes applicable to this case. There is a reasonable probability that the outcome of the proceedings would have been different had this plain error issue been raised by appellate counsel. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to be free from cruel and unusual punishment, and to

enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

## B. Statement of Facts Supporting Ground Ten

Under Missouri statutes applicable to this case, victim impact was not a proper subject for penalty phase. Therefore, the trial court should have refused this evidence, and appellate counsel should have raised that failure as plain error upon appeal.

## C. Direct Appeal pertaining to Ground Ten

This matter was not raised upon direct appeal.

## D. Post-conviction proceedings pertaining to Ground Ten

This matter was not raised in original post-conviction proceedings. Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied. See *Barton v. State*, 2016 WL 2343202 (Mo.banc 2016).

## E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. *Barton v. State*, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton

and Bartholow were husband and wife and also business partners (Appendix B).
Brotherton, because of his prior experience and training, was hired by the Missouri
State Public Defender System to be lead and learned counsel per the dictates of
V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained,
and so was hired to assist in ways not requiring capital case training and
experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting
her law practice duties in order to devote significant portions of her time to her
three young children (Appendix B). As a consequence of these factors, duties of
review of the records and of preparing an amended 29.15 petition were to be
handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary
Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on
medication for that condition (Appendix B). Ms. Bartholow indicated that she had
misgivings in accepting appointment to this capital case in part because of her
inexperience and in part because of Mr. Brotherton's ongoing mental health issues
(Appendix B). Ms. Bartholow's worst fears were realized when, at the very time
that Mr. Brotherton needed to be fully engaged in preparation of the amended
petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control
mood swings which created tremendous difficulties for Mr. Brotherton to do
effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of direct appeal counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

# XI. Ground Eleven
## Ineffective Assistance of Trial Counsel in failure to develop and present an effective Mitigation case

### A. Statement of Ground Eleven

Mr. Barton received prejudicial ineffective assistance of trial counsel with respect to development of an effective strategy of mitigation during the penalty phase of trial.  In short, there were viable strategies available, but counsel chose none of them, relying instead on argument which cast Mr. Barton in the most disparaging of lights, and therefore actually added to the aggravating case against Barton.  There is a reasonable probability that the outcome of the proceedings would have been different had trial counsel chosen and pursued one of the available mitigation strategies.   In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to present evidence, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

### B. Statement of Facts Supporting Ground Eleven

There were at least two alternatives for penalty phase strategy in this case. One would have been to rely upon evidence of Mr. Barton's severe brain injuries sustained in childhood and the love of his extended family.  Another would have been to eschew such pleas as contrary to the theme of the first phase defense, and instead advance a theory of residual doubt.  Unfortunately, trial counsel did

neither. Instead, they presented only three of the possible family witnesses, but did

not particularly argue regarding any of that, instead concentrating on the theme

MERCY. However, the pleas for mercy soon became admissions about Mr.

Barton being responsible for this murder and asking the jury to not be like the

Walter Bartons of the world. This only supported the aggravating case against Mr.

Barton and embraced neither of the available defense alternatives.

## C. Direct Appeal pertaining to Ground Eleven

This matter was not raised upon direct appeal.

## D. Post-conviction proceedings pertaining to Ground Eleven

These particular matters regarding penalty phase ineffectiveness of counsel

were not raised in original post-conviction proceedings. Instead, it was particularly

argued that trial counsel was ineffective for not presenting evidence about Mr.

Barton's mental defects as mitigation; upon this basis, the claim of ineffectiveness

was rejected since trial counsel reasonably rejected the idea of presenting mental

defect mitigation in light of Mr. Barton's own, long-standing, expressed

misgivings regarding such a presentation, as well as the lack of effect had by such

a presentation in a prior trial. *Barton v. State*, 432 S.W.3d 741, 757-758 (Mo.banc

2014).

Mr. Barton requested a finding of abandonment by mentally ill post-

conviction counsel and allowance of addition of this issue to his original amended

post-conviction motion, but those requests were denied.  See ***Barton v. State***, 2016

WL 2343202 (Mo.banc 2016).

<u>E. Ineffectiveness of and abandonment by state post-conviction counsel</u>

Gary Brotherton and Amy Bartholow were engaged by the Missouri State

Public Defender System to represent Mr. Barton in preparing an amended Rule

29.15 petition and in preparing and trying the matter before the Circuit Court

***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016).  At that time, Brotherton

and Bartholow were husband and wife and also business partners (Appendix B).

Brotherton, because of his prior experience and training, was hired by the Missouri

State Public Defender System to be lead and learned counsel per the dictates of

V.A.M.R. 29.16 (Appendix B).  Ms. Bartholow was not so qualified and trained,

and so was hired to assist in ways not requiring capital case training and

experience (Appendix B).  In addition, at that time, Ms. Bartholow was restricting

her law practice duties in order to devote significant portions of her time to her

three young children (Appendix B).  As a consequence of these factors, duties of

review of the records and of preparing an amended 29.15 petition were to be

handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary

Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on

medication for that condition (Appendix B).  Ms. Bartholow indicated that she had

misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because a) through minimally competent legal and factual research, they would have learned that that their theory of penalty phase ineffectiveness of trial counsel was defective, and b) through minimally competent examination of the record, they would have learned an effective theory for challenge against trial counsel's performance, that is that, contrary to trial counsels' claims, trial counsel never employed a mitigation strategy of residual doubt, or any other available mitigation strategy, and contrary to a residual doubt strategy actually made arguments conceding Mr. Barton's guilt.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to

raise those issues, they rendered substandard, ineffective representation to Mr.

Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about

the issues of ineffective assistance of trial and direct appeal counsel, including this

one, which were not raised by him in state post-conviction proceedings; Mr.

Brotherton has responded, by e-mail, and only generally, that "I do not recall the

process of deciding which issues to raise or how to raise them" and that "I had NO

strategy not to raise an issue at all or in a specific way.

In light of the facts aforementioned, the issue concerning ineffectiveness of

trial counsel was substantial, and post-conviction counsel were ineffective in

failing to raise this substantial issue.  In addition, the mental illness of Brotherton

constituted abandonment of post-conviction counsel, violative of Mr. Barton's

constitutional right to counsel.

## XII. Ground Twelve
**Ineffective Assistance of Trial and Appellate Counsel in not developing and presenting to the Court a proper record regarding Mr. Barton's lack of trial competence**

### A. Statement of Ground Twelve

Mr. Barton received prejudicial ineffective assistance of trial and appellate

counsel with respect to presenting to the trial and appellate courts readily available

evidence that Mr. Barton, because of brain damage and concomitant mental

defects, did not have the capacity to understand the proceedings and assist with his

defense in a reasoned manner. All counsel knew or should have known about Mr. Barton's brain damage and would have experienced first hand the profound difficulties in processing information and in reasoning with which Mr. Barton suffered and continues to suffer. Reasonably effective counsel would have taken steps to gain expert advice upon the subject and would have brought the entire matter to the attention of the trial and appellate courts, and would have sought relief from those courts, particularly suspension of proceedings and treatment for Mr. Barton. There is a reasonable probability that, had counsel taken the steps which reasonably effective counsel would have taken, that is having Mr. Barton's condition properly evaluated, bringing the entire situation to the attention of the trial and appellate courts, and seeking appropriate relief, the outcome of the proceedings would have been different. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to present evidence, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

### B. Statement of Facts Supporting Ground Twelve

All of the trial teams who handled Mr. Barton's case identified profound brain damage which Barton suffered as a result of a series of significant head injuries he sustained over the years, the first occurring when Barton was a

teenager.  Mr. Barton's condition has been confirmed by psychiatric and neuro-psychological testing, and to some degree by CT, MRI and SPECT testing. Attention has always centered on whether that information should be relied upon as a mitigating circumstance during penalty phase at trial.  What no one ever addressed was the profoundly adverse impact which the brain damage was surely having on Mr. Barton's abilities to receive and process information given to him and to make rational decisions based upon that information.  Put another way, it had never before been evaluated, much less argued to the courts, that the impulsiveness and explosiveness caused by the brain damage likely made it impossible for Mr. Barton to make good decisions about many issues, particularly those related to the proper handling of his case.  This is despite the fact that all attorneys who have dealt with Mr. Barton had found it virtually impossible to communicate to him complex aspects of his case.  In essence, Mr. Barton has been and is now unable to understand the proceeding against him and assist with his defense.

Mr. Barton's competence to proceed has been evaluated by psychiatrist Dr. John Wisner, M.D., and Dr. Wisner has concluded, in particular, that at the time of trial and direct appeal, as a result of mental defect, Mr. Barton was unable to understand the proceedings against him and assist in his defense.  See Appendix D.

### C. Direct Appeal pertaining to Ground Twelve

This matter was not raised upon direct appeal.

### D. Post-conviction proceedings pertaining to Ground Twelve

This matter was not raised in original post-conviction proceedings. Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied. See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016)

### E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court ***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of

review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of trial and appellate counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

### VIII. Ground Thirteen
### Ineffective Assistance of Trial Counsel in failing to object and request mistrial when the prosecution did not evince testimony after opening statement claim about supposed Barton admissions

#### A. Statement of Ground Thirteen

Mr. Barton received prejudicial ineffective assistance of trial counsel with respect to the failure by counsel to object and request a mistrial. Mistrial should have been declared when the prosecution described, in opening statement, testimony to be had by three informers about damning admissions made by Barton, and then the prosecution failed to present the testimony of those informers. There is a reasonable probability that the outcome of the proceedings would have been

different had objection and request for mistrial been raised by trial counsel.  In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

B. Statement of Facts Supporting Ground Thirteen

In his opening statement, the prosecutor represented that he would present jailhouse informer testimony about admissions by Mr. Barton "that he killed an old lady by cutting her throat, stabbing her and cutting an X on her", that his stabbing of the victim caused blood to splatter on his face, that he enjoyed the taste of licking the blood off his face, and that he would kill one of the informers because the informer intended to testify about his (Barton's) admissions.  Ultimately, the witnesses were not called by the State.  Despite the obvious prejudice of the then unsupported opening statement claims, trial counsel did not object and make request for mistrial.

C. Direct Appeal pertaining to Ground Thirteen

This matter was not raised upon direct appeal.

D. Post-conviction proceedings pertaining to Ground Thirteen

These particular issues, challenging trial counsel not requesting mistrial in light of the failure to present the damaging informer testimony mentioned in

opening statement, was not raised in original post-conviction proceedings, even though this legal approach to the matter would have been readily ascertainable by competent counsel. Instead, state post-conviction counsel argued that trial counsel were ineffective by failing to make some unspecified objection to the opening statement; reasonably competent counsel would have learned, as the Missouri Courts found, that there were no legal or factual bases for such an argument. ***Barton v. State***, 432 S.W.3d 741, 756, fn. 5 (Mo.banc 2014).

Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of the correctly crafted issue to his original amended post-conviction motion, but those requests were denied. See ***Barton v. State***, 2016 WL 2343202 (Mo.banc 2016).

E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. ***Barton v. State***, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B). Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained,

and so was hired to assist in ways not requiring capital case training and experience (Appendix B).  In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B).  As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B).  Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B).  Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because a) through minimally competent legal and factual research, they would have learned that their theory of ineffectiveness of trial counsel was defective, b) through minimally competent legal and factual research,

they would have learned an effective theory of trial counsel ineffectiveness, that when the state failed to support its luridly damaging opening statement with the testimony of the informers, the trial court should have sustained a request for mistrial, but trial counsel did not make such a request for relief.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of trial counsel was substantial, and post-conviction counsel were ineffective in failing to properly raise this substantial issue. In addition, the mental illness of

Brotherton constituted abandonment of post-conviction counsel, violative of Mr.

Barton's constitutional right to counsel.

## IX. Ground Fourteen
## Ineffective Assistance of Trial Counsel in failing to object to jury misinstruction

### A. Statement of Ground Fourteen

Mr. Barton received prejudicial ineffective assistance of trial counsel with

respect to the failure to object to the trial court misinstructing the jury concerning

statutory aggravating circumstances in a way which not only violated Missouri

Approved Instructions but also substantially lessened the prosecution's burden of

proof on the subject. There is a reasonable probability that the outcome of the

proceedings would have been different had proper objection been raised by trial

counsel. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective

assistance of counsel, to be free from cruel and unusual punishment, and to enjoy

due process of law, in violation of the 5th, 8th and 14th Amendments to the

Constitution of the United States.

### B. Statement of Facts Supporting Ground Fourteen

In its notice of intent to seek the death penalty, prosecutors alleged statutory

aggravating circumstances that Mr. Barton had two serious assaultive convictions

and had committed the murder in an outrageously or wantonly vile, horrible or

inhuman manner. However, contrary to the law and the MAI, the instruction

submitted by the State and given to the jury in Mr. Barton's trial erroneously failed to call upon the jury to make the detailed finding about serious assaultive convictions in the language of the model MAI instruction 40; instead, the instruction employed the simple prior conviction finding language of model MAI instruction 41B, and unlawfully allowed the jury to make its statutory aggravating factor findings on that inadequate basis.

C. Direct Appeal pertaining to Ground Fourteen

This matter was not raised upon direct appeal.

D. Post-conviction proceedings pertaining to Ground Fourteen

This matter was not raised in original post-conviction proceedings. Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied. See *Barton v. State*, 2016 WL 2343202 (Mo.banc 2016).

E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. *Barton v. State*, 2016 WL 2343202, *2 (Mo.banc 2016). At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B).

Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B). Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B). In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B). As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this one, which were not raised by him in state post-conviction proceedings; Mr. Brotherton has responded, by e-mail, and only generally, that "I do not recall the process of deciding which issues to raise or how to raise them" and that "I had NO strategy not to raise an issue at all or in a specific way.

In light of the facts aforementioned, the issue concerning ineffectiveness of trial counsel was substantial, and post-conviction counsel were ineffective in failing to raise this substantial issue. In addition, the mental illness of Brotherton constituted abandonment of post-conviction counsel, violative of Mr. Barton's constitutional right to counsel.

## X. Ground Fifteen
## Ineffective Assistance of Trial Counsel in failing to object to receipt of victim impact evidence and argument

### A. Statement of Ground Fifteen

Mr. Barton received prejudicial ineffective assistance of trial counsel with respect to the failure to object to state-proffered penalty phase evidence and argument pertaining to victim impact. Such evidence was not admissible in the case against Mr. Barton under the Missouri Statutes applicable to this case. There is a reasonable probability that the outcome of the proceedings would have been different had proper objection been made by trial counsel. In these ways, Mr. Barton was denied his rights at trial, to enjoy effective assistance of counsel, to confront adverse witnesses, to be free from cruel and unusual punishment, and to enjoy due process of law, in violation of the 5th, 6th, 8th and 14th Amendments to the Constitution of the United States.

### B. Statement of Facts Supporting Ground Ten

Under Missouri statutes applicable to this case, victim impact was not a proper subject for penalty phase. Therefore, the trial court should have refused this evidence.

### C. Direct Appeal pertaining to Ground Ten

This matter was not raised upon direct appeal.

### D. Post-conviction proceedings pertaining to Ground Ten

This matter was not raised in original post-conviction proceedings.  Mr. Barton requested a finding of abandonment by mentally ill post-conviction counsel and allowance of addition of this issue to his original amended post-conviction motion, but those requests were denied.  See *Barton v. State*, 2016 WL 2343202 (Mo.banc 2016).

### E. Ineffectiveness of and abandonment by state post-conviction counsel

Gary Brotherton and Amy Bartholow were engaged by the Missouri State Public Defender System to represent Mr. Barton in preparing an amended Rule 29.15 petition and in preparing and trying the matter before the Circuit Court. *Barton v. State*, 2016 WL 2343202, *2 (Mo.banc 2016).  At that time, Brotherton and Bartholow were husband and wife and also business partners (Appendix B).  Brotherton, because of his prior experience and training, was hired by the Missouri State Public Defender System to be lead and learned counsel per the dictates of V.A.M.R. 29.16 (Appendix B).  Ms. Bartholow was not so qualified and trained, and so was hired to assist in ways not requiring capital case training and experience (Appendix B).  In addition, at that time, Ms. Bartholow was restricting her law practice duties in order to devote significant portions of her time to her three young children (Appendix B).  As a consequence of these factors, duties of review of the records and of preparing an amended 29.15 petition were to be handled primarily by Mr. Brotherton (Appendix B).

Prior to accepting employment in connection with Mr. Barton's case, Gary Brotherton had received a diagnosis of Bipolar Disorder, and had been placed on medication for that condition (Appendix B). Ms. Bartholow indicated that she had misgivings in accepting appointment to this capital case in part because of her inexperience and in part because of Mr. Brotherton's ongoing mental health issues (Appendix B). Ms. Bartholow's worst fears were realized when, at the very time that Mr. Brotherton needed to be fully engaged in preparation of the amended petition in Mr. Barton's case, Mr. Brotherton was in the throes of out-of-control mood swings which created tremendous difficulties for Mr. Brotherton to do effective work (Appendix B).

Mr. Brotherton and Ms. Bartholow did not act as reasonably competent post-conviction counsel because they failed, entirely, to raise this significant issue.

Upon review of the work product of current counsel for Mr. Barton, and particularly the claims of ineffectiveness of trial and direct appeal counsel identified, including this one, Ms. Bartholow acknowledged the failures by her and Mr. Brotherton to raise those issues, and further acknowledged that, in failing to raise those issues, they rendered substandard, ineffective representation to Mr. Barton (Appendix B).

Mr. Brotherton has been contacted, and has been provided information about the issues of ineffective assistance of trial and direct appeal counsel, including this

one, which were not raised by him in state post-conviction proceedings; Mr.

Brotherton has responded, by e-mail, and only generally, that "I do not recall the

process of deciding which issues to raise or how to raise them" and that "I had NO

strategy not to raise an issue at all or in a specific way".

In light of the facts aforementioned, the issue concerning ineffectiveness of

trial counsel was substantial, and post-conviction counsel were ineffective in

failing to raise this substantial issue. In addition, the mental illness of Brotherton

constituted abandonment of post-conviction counsel, violative of Mr. Barton's

constitutional right to counsel.

8.    Not all of the grounds for relief raised in this petition have been presented to
      the highest state court having jurisdiction . Particularly, grounds five
      through fifteen were not properly presented to Missouri Courts due to
      ineffectiveness of and abandonment by state post-conviction counsel.


9.    There have previously been filed in Federal Court two items regarding the
      conviction challenged in this amended petition. Those are

      Petition for certiorari to the United States Supreme Court regarding direct
      appeal result, see *Barton v. Missouri*, 555 U.S. 842 (2008)

      The original petition in this case

10.   The name and address of each attorney who represented Mr. Barton in the
      various stages of the judgment attacked herein:

      (a)   At preliminary hearing:  Dan Gralike, Office of State Public Defender,
            Columbia MO

      (b)   At arraignment and plea:   Dan Gralike, Office of State Public
            Defender, Columbia MO

(c)    At first three trials and first sentencing trial: Dan Gralike and Mary Ellen Young, Office of State Public Defender, Columbia MO

(d)    At post-conviction proceedings after fourth trial and upon fifth trial direct appeal : Elizabeth Carlyle, 6320 Brookside Plaza, #516, Kansas City MO 64113

(e)    At fifth trial: Brad Kessler, 1520 Washington Ave., St. Louis MO 63103, David Bruns, 8000 Bonhomme Ave., St. Louis MO 63105, Kim Freter, 225 S. Meramec, #301, Clayton MO 63105

(f)    In most recent post-conviction proceeding: Amy Bartholow, Pete Carter, Valerie Leftwich Office of State Public Defender, Columbia MO 65201, Gary Brotherton, 1514 Kinloch Ct., Columbia MO 65203

(g)    On appeal from any adverse ruling in a post-conviction proceeding: William J. Swift, Office of State Public Defender, , Columbia MO 65201

11.    Sentencing in this case was upon only the one count of murder in the first degree, and there were no other counts or indictments upon which sentencing was had.

12.    Mr. Barton has no other sentences to serve after completion of the sentence imposed by the judgment under attack.

13.    The following is the explanation regarding the timeliness of this petition. As noted in subparagraphs 4 and 5 infra, conviction became final on October 6, 2008 upon denial of certiorari in *Barton v. Missouri*, 555 U.S. 842 (2008); however, the limitations period was tolled prior to that time by filing of a timely post-conviction petition on April 11, 2008, which matter was pending until finally decided by issuance of Missouri Supreme Court mandate on June 24, 2014. The limitations period was again tolled on June 9, 2015 by the filing of a motion for determination of abandonment of counsel. That matter has not yet been finally decided. Consequently, the original petition in this case, as well as this amended petition, are both timely filed

WHEREFORE, Petitioner, by Attorney, prays that this Honorable Court grant petitioner relief as set forth in the subparagraphs heretofore, particularly setting aside of the conviction and sentence of death imposed against him, and dismissal of the charge against him, and any other and further relief which the Court may deem just and proper under the circumstances.

Respectfully submitted

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.
P.O. Box 216
Trimble MO 64492
Phone: 816-213-0782
Fax:   816-635-5155
ATTORNEY FOR PETITIONER

### *Verification by Counsel and Signature by Petitioner*

I Frederick A. Duchardt, Jr. do hereby declare (or certify, verify, or state) under penalty of perjury that I am the appointed counsel for Walter Barton, that I have conducted a thorough examination of the records and information related to Walter Barton's cases, and that, based upon my knowledge, I believe the foregoing is true and correct. Since I believe that Walter Barton, as a result of mental disease or defect, does not understand the proceedings against him, I make this verification on his behalf pursuant to the dictates of 28 U.S.C. 2242. I have attempted to explain the contents of this Petition to Mr. Barton, though I do not believe that he understands that explanation. Mr. Barton's and my signatures appear hereupon.

Dated this 24th day of May, 2016.

/s/Frederick A. Duchardt, Jr.            /s/Walter Barton
FREDERICK A. DUCHARDT, JR.            WALTER BARTON

## *<u>CERTIFICATE OF SERVICE</u>*

I hereby certify that a copy of the foregoing was e-mailed to the following this 24th day of May 2016 to

Caroline Coulter
Assistant Attorney General
P.O. Box 899
Jefferson City, Mo. 65102
caroline.coulter@ago.mo.gov

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.